## HENSHAW *et al.* v. CLARK AND ONE HUNDRED AND THREE CHINAMEN.

MINERS have no right to enter upon private land, and subject it to such uses as may be necessary to extract the precious metals which it contains.

Where premises containing deposits of gold are held under a patent from the United States, an injunction lies to prevent miners from excavating ditches, digging up the soil, and flooding a portion of the premises, for the purpose of extracting the gold.

Such injuries are calculated to destroy the entire value of the land for all useful purposes. They are irreparable.

APPEAL from the Fifteenth District.

[The points and authorities on the mineral question are omitted for the reason that the briefs in *Biddle Boggs* v. *Merced Mining Co.* (*ante,*) were filed in the case, and the whole subject is there discussed by counsel at length.]

*W. H. Rhodes,* for Appellants.

A Court of Equity will interfere to prevent a trespass, in the nature of waste to the inheritance where the injury is of an

irreparable nature, even though there has been no trial of the right at law. (3 Dan. Ch. Pr. 316; 2 Sto. Eq. Jurisp. Sec. 128, Note 1; Lead. Cas. in Eq. 508; 2 Eden on Injunc. 233, 235, 236, Note 1; *West* v. *Walker*, 2 Green. Ch. 279; *Van Winkle* v. *Curtis*, Id. 422; *Heslin* v. *West*, 3 Green. Ch. 449; Note to 2d Eden, 227; *Kane* v. *Vanderling*, 1 Johns. Ch. 11; *N. Y. Printing Co.* v. *Fitch*, 1 Paige's Ch. 97; *Jerome* v. *Ross*, 7 John. Ch. 315; *Varick* v. *Corporation of New York*, 4 Id. 53; 2 Hill, 157; 26 Wend. 115; Willard's Eq. Jurisp. 383; *Merced Mining Co.* v. *Fremont*, 7 Cal. 317.)

It may never have occurred hitherto in the history of the English law, that an injunction was applied for to prevent surface mining, but the same power which prevents brick making is competent to restrain any irreparable injury done to the soil.

In *Buckelew* v. *Estill*, (5 Cal. 108,) the Supreme Court restrained defendant from cutting timber, before the title of the land was settled even by the Land Commissioners. Here, it has been patented by the President of the United States. (See also the case of *Fitzgerald* v. *Urton*, 5 Cal. 308; *Stoakes* v. *Barrett*, Id. 36, and authorities.)

*Heydenfeldt*, also, for Appellants.

1. Under the peculiar language of our code, the preventive remedy by injunction has been liberalized and enlarged. (Practice Act, Sec. 112.)

2. But without the code the averments of the complaint are sufficient to authorize the remedy. They are sufficient upon the charge of waste. The complaint shows that the land is dug up — as a consequence the soil is destroyed, and can never be restored. The answer shows that it is washed away in searching for the gold it contains—this is absolute destruction of the substance.

"Waste is a spoil and destruction of the estate either in houses, woods, or lands, by demolishing not the temporary profits only, but the very substance of the thing, thereby rendering it wild and desolate." (Eden on Injunc. 179, Note 1.) Converting one kind of land into another is waste, for which this remedy lies. (8 John. 145; Coke Lit. 53.) It is waste to dig up strawberry beds in a garden. (*Wetherill* v. *Howell*, 1 Camp. 227.) In *Finley* v. *Smith*, (6 Munf. 134,) the Court say: "The law of waste in

its application here must be varied and accommodated to the circumstances of our new and unsettled country." In *Scudder* v. *Trenton Del. F. Co.* (Sax. Ch. R. 694,) held : " Digging away the green sward on the bank of the river so as to expose it to be washed by the river, is waste." (*Gibson* v. *Smith*, 2 Atk. 182; *Hanson* v. *Gardener*, 7 Ves. 308; *Kimpson* v. *Eve*, 2 Ves. & B. 349; *Fanant* v. *Lowell*, 3 Atk. 723.) Digging for gravel, lime, clay, brick-earth, or slate, or digging quarries for stone, or mines of metal, or coal, is waste. (Eden on Injunc. 192; *Sales* v. *Sales*, 3 Sandf. Ch. 601; *Bishop of London* v. *Webb*, 1 P. Wm. 527.) For cases of waste, see *Mogg* v. *Mogg*, Dick. 670; *Fleming's Case*, 6 Ves. 147; 7 Id. 307; 1 Bro. 588; 10 Ves. 290; *Shaw* v. *Henderson*, 2 Dew. 219; 18 Ves. 184; 17 Id. 128; *Hughes* v. *Trenton College*, 1 Ves. 188; *Belknap* v. *Belknap*, 2 Johns. Ch. 162; *Kerhee* v. *West*, 3 Greenl. Ch. 449; 3 How. 121; *Livingston* v. *Reynolds*, 2 Hill, 157; 26 Wend. 115; *Varick* v. *New York*, 4 Johns. Ch. 53.)

The prevailing idea throughout these decisions is the damage to the inheritance or irreparable damage. They all mean that where land is injured, it cannot be paid in money; the proprietor is entitled to be protected in its enjoyment as nature made it, free from injury or disturbance, which would affect its use or value, and equity thus refers exclusively to the quality of the injury, and not at all to the quantity.

*P. L. Edwards*, for Respondent.

Conceding the general accuracy of the reasoning and authorities of the counsel for the Appellants, as to the cases in which a Court of Equity ought to restrain a trespass, we insist that he has wholly failed to bring this case within their scope. Here, there is no injury done or threatened, which may not be fully compensated in damages. The minerals, which the counsel considers the substance of the estate, are not the property of the plaintiffs, but of this State, or of the United States, under whose license, expressed or implied, the defendants are acting.

In this case no irremediable injury is shown. Digging water ditches on land has been held not to be such. (*Waldron* v. *Marsh*, 5 Cal. 119.) Flooding the land is not an irreparable injury.

" To entitle a plaintiff to the equitable interposition of the Court, he must show a proper case, and one in which he has no adequate remedy at law." And " the simple allegation of irreparable injury," is not sufficient; it should appear to the Court " from the facts set forth in the bill." (*De Witt* v. *Hays*, 2 Cal. 463.)

In the case of *Gates* v. *Teague*, it was held, that " the mere allegation that the injury was irreparable, would not in itself be sufficient; but the complaint must show how." This doctrine is held in *Amelung et als.* v. *Lukamp*, 9 Gill & John. 474; *Merced Mining Co.* v. *Fremont et als.* 7 Cal. 317.

FIELD, C. J. delivered the opinion of the Court—COPE, J. concurring.

This is a suit on the equity side of the Court, to restrain the defendants from committing trespass, in the nature of waste, upon the premises of the plaintiffs. The premises are fitted, to a limited degree, for agricultural and grazing purposes, and contain in their entire extent deposits of gold. The plaintiffs derive their title from a grant of the former Mexican Governor of California, and a patent issued, upon its confirmation, by the United States. The acts charged as trespasses consist in excavating ditches, and digging up the soil, and in flooding a portion of the premises to the extent of about fifty acres, with water elevated from Feather River, by means of machinery constructed for that purpose. The defendants admit the commission of those acts, and in substance allege, by way of justification, that the grant and patent, assuming that the plaintiffs derived title to the premises thereunder, conveyed no right to the gold and other minerals which the premises contain; that the defendants are miners, and as such committed the several acts charged against them, in their business of mining; that those acts were accompanied with no more damage to the premises than the business necessarily required; that as miners they had good right and authority to enter upon the premises, or any portion thereof, for the purpose of mining, and extracting the precious metals from the soil, and to use the premises and materials found thereon necessary for that purpose.

The preliminary injunction, granted on the filing of the com-

plaint, was dissolved, and from the order of dissolution the appeal is taken. On the motion to dissolve, affidavits on behalf of the respective parties, were read in addition to the pleadings. Some criticism is indulged in reference to the effect of the allegations of the complaint, and the denials of the answer, which we do not consider, for we are of opinion that the pleadings, though not very formally drawn, (and which might be amended, to their great improvement,) present the real matter in controversy between the parties.

The questions raised by the record relate, first, to the right of miners to enter upon private land and subject it to such uses as may be necessary to enable them to extract the precious metals which it may contain; and, second, to the right of the owner to the equitable interference of the Court to restrain, by injunction, such entry upon and use of his land.

For the decision of the first question we have only to refer to the opinion recently rendered in the case of *Biddle Boggs* v. *The Merced Mining Co.* in which we considered the precise point here presented. It is evident that if the defendants possess, against the true owner of the land, the rights they assert, it must be on the ground that the mineral does not pass with the soil, but belongs either to the United States, or to the State of California, and that they have an effectual license to enter upon the premises and extract the same ; and in the case cited we held, that there was no such license from either government.

Upon the second question, we have no doubt that the plaintiffs are entitled to the injunction. The injuries which are the subject of complaint are of a character calculated to destroy the entire value of the land for all useful purposes. Those which result from flooding are continuous in their nature, necessarily effecting the entire exclusion of the owner. Those which consist in excavating ditches, and in digging up the soil are irreparable, in the sense that the former condition of the property could not probably be restored without an expenditure exceeding the original value of the land. The defendants, with the exception of one, are Chinamen—with no permanent places of residence, and of little pecuniary responsibility—against whom, when the gold is once extracted, and they have departed from the ground—a claim for redress for injuries committed to the freehold could

seldom, if ever, be successfully enforced.  A denial of the preventive remedy by injunction in such case would be tantamount to a denial of all protection.

"Formerly, indeed," says Story, in considering the cases in which injunctions are allowed, and the grounds of their allowance in restraint of trespass, "Courts of Equity were extremely reluctant to interfere at all, even in regard to cases of repeated trespasses.  But now there is not the slightest hesitation, if the acts done or threatened to the property would be ruinous or irreparable, or *impair the just enjoyment of the property in the future.* If, indeed, Courts of Equity did not interfere in cases of this sort, there would be (as has been truly said) a great failure of justice in the country." (Story's Eq. 928.)

It follows from the views we have taken that the order dissolving the injunction must be reversed, and the Court below directed to restore the injunction until the final hearing, when the propriety of either dissolving it or of rendering it perpetual will be determined according to the merits of the case.

Ordered accordingly.